IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JEREMY ROTHE-KUSHEL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 18-00319-CV-W-BP |
| ) | |
| JEWISH COMMUNITY FOUNDATION ) | |
| OF GREATER KANSAS CITY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER AND OPINION DENYING DEFENDANT
JEWISH COMMUNITY FOUNDATION OF GREATER KANSAS CITY'S
MOTION TO DISMISS**

Plaintiff's Complaint arises from an incident at the Kansas City Public Library, ("KCPL"), on May 9, 2016. In this Order, the Court addresses the Motion to Dismiss filed by the Jewish Community Foundation of Greater Kansas City, ("JCF"). For the reasons set forth below, the motion, (Doc. 31), is **DENIED**.

**I. BACKGROUND**

The Amended Complaint is extremely detailed, and not all of the allegations are relevant to the issues raised in JCF's motion. In 2015, JCF and the Truman Library Institute, ("TLI"), established a lecture series about President Truman's decision to recognize Israel and that decision's impact on world events. (Doc. 1, ¶ 23.) In the fall of that year, JCF and TLI invited former ambassador Donald Ross to speak at one of the lectures. (Doc. 1, ¶ 25.) Ambassador Ross's lecture was to be given at the Truman Forum Auditorium located at KCPL. (*E.g.,* Doc. 1, ¶¶ 27-29.)

Lauren Hoopes, ("Hoopes"), was JCF's Executive Director, (Doc. 1, ¶ 5), and she was heavily involved in planning the lecture. (*E.g.,* Doc. 1, ¶¶ 29-42.) Among the conversations

Hoopes participated in were some related to security for the event, (*e.g.,* Doc. 1, ¶¶ 43-55), and many of the security-related conversations included Defendant Blair Hawkins, who at that time was JCF's director of security. (Doc. 1, ¶ 7.) In January 2016, Hoopes advised Hawkins about the event, provided some information, and "asked Hawkins to remind her of the protocol for security at such events and to let her know how he would like to be kept in the loop." (Doc. 1, ¶ 41.) Hoopes contacted Hawkins again in February 2016 and asked him "to let her know what arrangements needed to be made and how much to budget for security." (Doc. 1, ¶ 43.) Hawkins and Hoopes (and others) then exchanged emails regarding who to contact at KCPL and the amount of money that needed to be budgeted. (Doc. 1, ¶¶ 44-51, 55.) The plans for security included hiring off-duty police officers.

The week before the lecture, a conference call was held to discuss several topics; Hoopes was among the participants, and one of the topics discussed was how to deal with protestors. (Doc. 1, ¶ 59.) Hawkins was told that he should remove protestors, and he responded "that he would not remove anyone without direction." (Doc. 1, ¶ 60.) One of the participants in the call suggested that it should be "obvious" who was protesting, and Hawkins disagreed. "[U]ltimately, an arrangement was made for the protestor to be pointed out, and Hawkins would be pointed out which would be a signal to remove the protestor . . . ." (Doc. 1, ¶ 60.)

KCPL found out about the plan to use off-duty officers the day before the lecture. (Doc. 1, ¶ 75.) KCPL discussed the matter with representatives from JCF and TLI, and an agreement was reached that limited the officers' authority:

> KCPL staff put two conditions on their agreement to allow the off-duty officers to be present. First, no one could be removed from the library for asking a question that was perceived to be unpopular or disliked. Second, if officers thought someone needed to be removed, unless that person posed an imminent threat, the officers would consult library staff before making the decision to remove the individual.

(Doc. 1, ¶ 78)

Plaintiff attended the lecture. Hawkins allegedly directed Defendant Michael Satter, a Sergeant with the Kansas City Police Department, ("the KCPD"), who was working off-duty, to search Plaintiff when he entered the auditorium. (Doc. 1, ¶ 87.) During the Q-and-A session following the Ambassador's speech, Defendants Joshua Stein (JCF's Director of Fund Development) and Kim Rausch (TLI's Director of Development) told the person operating the sound system that they would be monitoring the proceedings and would advise her whether she should turn off a questioner's microphone. (Doc. 1, ¶¶ 95-96.) Plaintiff asked a question during the Q-and-A session. (Doc. 1, ¶ 100.) While he was asking the question, Stein approached him and Rausch signaled that Plaintiff's microphone should be turned off. (Doc. 1, ¶¶ 101-02.)

At some point, Hawkins reported over the radio that someone needed to be removed from the auditorium; Defendants Satter, Brent Parsons, and Michael Curley were the individuals who had radios. (Doc. 1, ¶ 104.) As stated previously, Satter was a Sergeant with the KCPD, and Parsons and Curley were detectives with the KCPD; all three were working off-duty that night. (Doc. 1, ¶¶ 8-10.) Hawkins made his way to Plaintiff, grabbed Plaintiff's left arm, and told him "You're done." (Doc. 1, ¶¶ 108-09.) Plaintiff was eventually escorted out of the auditorium, and he was later booked and charged with trespassing and obstructing or resisting a public safety officer. (Doc. 1, ¶¶ 104-16.) The charges were eventually dropped. (Doc. 1, ¶ 117.)

The Complaint sets forth eight counts, but JCF is named only in Counts I, III, VII and VIII. Those counts are:

I. A claim under 42 U.S.C. § 1983, asserting a violation of Plaintiff's First Amendment rights.

III. A claim under § 1983, asserting a conspiracy to violate Plaintiff's civil rights.

VII. A claim under state law for false arrest.

VIII. A civil conspiracy claim under state law.

More details about these four counts will be provided in Part II, below.

JCF contends that it should be dismissed because the Complaint does not adequately allege that (1) Plaintiff's First Amendment rights were violated or that (2) JCF caused the police to wrongfully arrest Plaintiff. Plaintiff argues that JCF's arguments require the Court to construe the facts in JCF's favor, which is not permitted when evaluating a motion to dismiss. The Court resolves these arguments below.

## II. DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).

Documents "necessarily embraced by the complaint" may be considered in ruling on a Rule12(b)(6) motion to dismiss. *E.g, Enervations, Inc. v. Minn. Mining & Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir. 2004). This includes "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."

*Ashanti v. City of Golden Valley,* 666 F.3d 1148, 1151(8th Cir. 2012) (quotation omitted). JCF has supplied an excerpt from what it describes as a transcript of a recording of Plaintiff's question and what was said immediately thereafter, and argues that the Court can consider the transcript because it reveals the contents of Plaintiff's question and the other events set forth in the Complaint. Plaintiff does not concede the accuracy of the transcript or JCF's characterization of his comments and behavior as "off-topic" or disruptive. The recording itself has not been supplied to the Court. Regardless, even if the recording had been supplied the Court likely could not ascertain additional relevant facts necessary to provide a complete and proper context for the transcript's contents (such as what else might have been said, whether anything that was said was disruptive or off-topic, or what else was happening at the time) without the benefit of even more facts. For these reasons, the Court remains limited to the allegations in the Complaint.

### A. The Federal Claims – Counts I and III

Count I of the Complaint alleges that JCF, acting primarily through Hawkins, violated Plaintiff's First Amendment rights by removing him from the auditorium based on the content of his question to Ambassador Ross. Count III alleges that JCF conspired with others to violate Plaintiff's First Amendment rights. JCF argues that Plaintiff's First Amendment rights were not violated because (1) Plaintiff was removed from the auditorium because he was disruptive and not because of the content of his speech and (2) the rights that Plaintiff claims conflicted with the First Amendment rights of others.[1] Plaintiff responds that JCF's arguments depend on considering facts that are not contained in the Complaint (including particularly the transcript discussed above) or

---

[1] JCF acknowledges that it is not presenting an argument contending that it is not a state actor. (Doc. 32, p. 10, n.2.) JCF also does not present an argument that requires the Court to "classify" the nature of the forum (*e.g.,* as traditional, nonpublic, designated, limited, etc.). (Doc. 32, p. 13, n.3.) Therefore, the Court does not address these issues.

5

construing the Complaint's allegations in JCF's favor – neither of which is permitted. As discussed below, the Court agrees with Plaintiff.

JCF emphasizes that Plaintiff's right to free speech did not include the right to disrupt the lecture, argue with Ambassador Ross, or discuss matters that were not related to the lecture's topic. (Doc. 32, pp. 11-12).[2] The Court has no reason to doubt these legal propositions; however, the Complaint does not allege that Plaintiff disrupted the lecture, argued with Ambassador Ross, or discussed matters that were not related to the lecture's topic. JCF further argues that the Complaint does not "plausibly allege that Plaintiff's removal was more likely due to the content of his speech and not his conduct in arguing with Ambassador Ross and disrupting the [l]ecture." (Doc. 32, p. 12.) This argument also depends upon JCF's characterization of the facts because it requires the Court to accept that Plaintiff was disruptive; however, as stated, the Complaint does not establish this fact. Finally, JCF points out that Plaintiff allegedly told Satter that he had previously "ask[ed] political questions that some public figures find uncomfortable and . . . document[ed] the response for the public record," (Doc. 1, ¶ 90), that he was allowed into the auditorium, and that he was allowed to ask his question. (*See* Doc. 32, p. 7.) These facts do not demonstrate that Plaintiff disrupted the lecture on May 9, 2016, or that he was removed from the auditorium because of his conduct as opposed to the content of his question. Therefore, dismissal cannot be justified on this basis.[3]

---

[2] All page numbers are those generated by the Court's CM/ECF system and may not correspond to the document's original page numbers.

[3] JCF also relies on *Iqbal*'s statement that the complaint in that case failed to state a claim for discrimination because "[a]s between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." (Doc. 32, p. 12 (quoting *Iqbal,* 556 U.S. at 682).) However, *Iqbal*'s reference to "that 'obvious alternative explanation'" was a reference to other allegations in the complaint that provided a non-discriminatory motivation for the policy at issue. *Iqbal*, 556 U.S at 681. In contrast, Plaintiff's Complaint does not allege facts suggesting that he was removed from the auditorium because he was disruptive.

JCF's second argument with respect to the federal counts is similar to its first; it contends that if Plaintiff had any First Amendment rights, those rights terminated when Plaintiff interfered with the rights of JCF, Ambassador Ross, and the other attendees. (Doc. 32, pp. 13-15.) However, as discussed above, the Complaint does not contain any allegations establishing that Plaintiff interfered with the rights of JCF, Ambassador Ross, or the other attendees. Therefore, this argument cannot be credited at this time.

### B. The State Claims – Counts VII and VIII

As with the federal claims, the Court will address the state claims together. Count VII asserts a claim for false arrest, which occurs when a plaintiff proves that he has been confined without legal justification. "So there are only two elements: restraint of the plaintiff against his will, and the unlawfulness of that restraint." *Blue v. Harrah's North Kansas City, LLC,* 170 S.W.3d 466, 472 (Mo. Ct. App. 2005.) Count VIII asserts a claim of civil conspiracy under state law. A civil conspiracy "is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act." *Oak Bluff Partners, Inc. v. Meyer,* 3 S.W.3d 777, 780-81 (Mo. 1999) (en banc). However, it is not an independent cause of action; instead, a civil conspiracy is a theory of vicarious liability that extends liability to all members who agree to commit a tort, including those who did not personally engage in the tortious act. *Central Trust & Inv. Co. v. Signalpoint Asset Mgt., LLC,* 422 S.W.3d 312, 324 (Mo. 2014) (en banc); *see also Amesquita v. Gilster-Mary Lee Corp.,* 408 S.W.3d 293, 304 (Mo. Ct. App. 2013); *Envirotech, Inc. v. Thomas,* 259 S.W.3d 577, 586 (Mo. Ct. App. 2008). Therefore, Count VII's false arrest claim is the basis for Count VIII's civil conspiracy claim. JCF argues that these two claims should be dismissed because the Complaint does not adequately allege that it (through Hawkins' conduct)

7

(1) caused Plaintiff to be arrested or (2) gave false or misleading information to the police. The Court disagrees.

"A person can be liable for false imprisonment if he encourages, causes, promotes, or instigates the arrest. Whether a person instigated an arrest is a fact-specific inquiry; there is no fixed test that may be applied." *Highfill v. Hale,* 186 S.W.3d 277, 280 (Mo. 2006) (en banc). Here, the Complaint alleges that "Hawkins advised Parsons, Satter, and Curley that someone needed to be removed," (Doc. 1, ¶¶ 142(t), 183(t)), and that he then "authorized a complaint for trespass, and Parsons had and used his ultimate authority as to whether to write a charge for trespass," (Doc. 1, ¶¶ 142(v), 183(v)), even though "KCPL and/or its representatives, agents, or employees would have been the appropriate complainant as to any charge . . . for trespass." (Doc. 1, ¶ 132; *see also* Doc. 1, ¶ 78 (alleging that KCPL extracted an agreement that nobody would be removed for asking unpopular questions and nobody would be removed unless library staff were consulted first.)  When construed in Plaintiff's favor, these allegations (and others not listed here) plausibly suggest that Hawkins – JCF's agent – directed (or at least instigated) the officers to arrest Plaintiff for trespassing even though (1) Plaintiff was not trespassing and (2) Hawkins and JCF lacked the authority to make such a complaint.[4]  This is sufficient to state a claim for false arrest.

### III. CONCLUSION

The Court is required to construe the Complaint's allegations in the light most favorable to Plaintiff.  Viewed in this light, and considering the arguments JCF has presented, the Court

---

[4] JCF also contends that the Complaint does not sufficiently "allege facts showing . . . that the police failed to exercise their independent judgment," (Doc. 32, p. 16), but after construing the factual allegations in Plaintiff's favor the Court disagrees.

concludes that Counts I, III, VII and VIII state claims against JCF for which relief can be granted. Accordingly, JCF's Motion to Dismiss, (Doc. 31), is **DENIED**.

**IT IS SO ORDERED.**

DATE: November 2, 2018

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT