IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JEREMY ROTHE-KUSHEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 18-00319-CV-W-BP |
| | ) | |
| JEWISH COMMUNITY FOUNDATION | ) | |
| OF GREATER KANSAS CITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING DEFENDANTS LAUREN HOOPES'S AND JOSHUA STEIN'S MOTIONS TO DISMISS

Plaintiff's Complaint arises from an incident at the Kansas City Public Library, ("the Library"), on May 9, 2016. Plaintiff filed suit against multiple parties, some of whom were later dismissed by the Court. In particular, the Court dismissed Defendants Lauren Hoopes ("Hoopes") and Joshua Stein, ("Stein"). (Doc. 78; Doc. 79.) Thereafter, Plaintiff filed an Amended Complaint, (Doc. 151), that, among other things, re-added Hoopes and Stein as defendants. Now pending are motions to dismiss filed by Hoopes and Stein. For the reasons set forth below, their motions, (Doc. 164 and Doc. 166), are **GRANTED** and Plaintiff's claims against Hoopes and Stein are **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

The Amended Complaint is extremely detailed, and not all of the allegations are relevant to Plaintiff's claims against Hoopes and Stein. In 2015, the Jewish Community Foundation of Greater Kansas City, ("JCF") and the Truman Library Institute, ("TLI"), established a lecture series about President Truman's decision to recognize Israel and that decision's impact on world events. (Doc. 151, ¶ 21.) In the fall of that year, JCF and TLI invited former ambassador Donald Ross to speak at one of the lectures. (Doc. 151, ¶ 39.) Ambassador Ross's lecture was to be given

at the Truman Forum Auditorium located at the Library.  (*E.g.,* Doc. 151, ¶¶ 40-41; 72.)  At the time, Hoopes was JCF's Executive Director and Stein was JCF's Director of Fund Development.  (Doc. 151, ¶¶ 5-6.)

Planning for Ambassador Ross's lecture began by late December 2015, and Hoopes became involved in January 2016.  (Doc. 151, ¶ 41.)  There is no need to detail the Amended Complaint's allegations about the many conversations Hoopes was involved in or all of the things she did to prepare for the lecture.  As relevant to the issues before the Court, in January 2016 Hoopes sent an email to Blair Hawkins – the person in charge of security and a former defendant in this case – to let him know about the event and to request that he "remind her of the protocol for security at such events and to let her know how he would like to be kept in the loop."  (Doc. 151, ¶ 55.)  Hawkins replied with an estimate of the cost for the services of off-duty police officers and his preliminary estimate as to the number of officers needed.  (Doc. 151, ¶ 56.)  In February, Hoopes emailed Hawkins again and, among other things, "asked that Hawkins let her know what arrangements needed to be made and how much to budget for the security."  (Doc. 151, ¶ 72.)  Hawkins eventually responded that three officers would be needed and proposed that he and Hoopes meet to discuss the matter.  (Doc. 151, ¶ 77.)

In May 2016, Hoopes, Stein, Hawkins, JCF's Director of Communications (Brooke Hardy) and TLI's Executive Director (Alex Burden) participated in a conference call.  One of the topics discussed was how to deal with protestors, hecklers, and other disruptions, (Doc. 151, ¶ 114), particularly given that the Ambassador's lecture was to be followed by a question and answer session during which Ambassador Ross would take questions from the audience.  It was ultimately "concluded that if Hawkins heard the microphone shut off during a question, he would take that as a cue that he should remove the questioner."  (Doc. 151, ¶ 116.)

Plaintiff attended the lecture. Before the public portion of the event, Plaintiff had been outside the Library eating a dinner he had brought in a sack. Hoopes saw Plaintiff eating his dinner outside the Library and pointed him out to Hawkins. Hawkins indicated that he had already seen Plaintiff and would check on him. (Doc. 151, ¶¶ 150-51.) Hawkins then advised the off-duty officers that Plaintiff was a potential protestor. (Doc. 151, ¶ 151.) When Plaintiff attempted to enter, one of the off-duty officers asked for permission to search him. (Doc. 151, ¶ 153.) Plaintiff consented to the search and was eventually admitted to the lecture. (Doc. 151, ¶¶ 155, 157.)

Leslie Case was one of the Library employees operating the audiovisual equipment. After the lecture, and before the Q-and-A session began, Stein and former co-defendant Kim Rausch approached Case and told her that if they "gave [her] a signal she needed to cut off the microphone." (Doc. 151, ¶ 165.) Once the Q-and-A session started, Plaintiff initiated an exchange with Ambassador Ross. (Doc. 151, ¶ 171.) At some point during the exchange "Hoopes turned her head and looked at [Stein]" and Stein moved closer to Plaintiff. (Doc. 151, ¶ 171(j)-(k).) At some point thereafter, "Hoopes signaled to Josh Stein with her body and head" and Stein moved away from Plaintiff. (Doc. 151, ¶ 171(n)-(o).) Plaintiff also alleges that Raush directed various glances and gestures at Stein, and (critically) that she twice "signaled to Case to cut off the microphone." (Doc. 151, ¶ 171(p), (v).) Anticipating that the microphone would be cut, Hawkins prepared to remove Plaintiff from the auditorium. (Doc. 151, ¶ 171(aa), (cc).) It was at this time that Case turned off Plaintiff's microphone. (Doc. 151, ¶ 171(bb).)[1] Plaintiff was eventually removed from the auditorium by Hawkins and some or all of the off-duty policemen. He was later

---

[1] This subparagraph alleges that Case turned off the microphone "[i]n response to the signals by Rauch and the movement toward [Plaintiff] by Hawkins and Josh Stein," but the Amended Complaint does not allege (1) that Stein signaled Case to cut off Plaintiff's microphone, or (2) that Stein told Case that she should turn off the microphone if he advanced toward a member of the audience.

3

arrested and removed from the Library. At Hawkins's request the officers charged Plaintiff with trespassing, (Doc. 151, ¶¶ 201, 203), but the charges were eventually dropped.

Plaintiff also alleges that there was an agreement between JCF and the Library that nobody would be removed from the lecture without the Library's approval. Plaintiff asserts that "[b]y observing the removal of [Plaintiff] and making no effort to intervene to halt it, . . . Hoopes approved the removal of [Plaintiff], without conferring with" the Library's representatives. (Doc. 151, ¶ 174.)

The Amended Complaint sets forth eight counts, but Stein is named only in Counts I, III, and VIII. Hoopes is named in those counts and in Count VII as well. Those counts are:

I. A claim under 42 U.S.C. § 1983, asserting a violation of Plaintiff's First Amendment rights,

III. A claim under § 1983, asserting a conspiracy to violate Plaintiff's civil rights,

VII. A claim under state law for false arrest, and

VIII. A claim under state law for civil conspiracy.

More details about these counts will be provided in Part II, below.

Hoopes and Stein contend that they should be dismissed because they are private (not state) actors and the Amended Complaint does not allege that they were personally involved in anything that happened to Plaintiff at the lecture or that they agreed with others that Plaintiff's rights should be violated. Plaintiff generally argues that Hoopes and Stein were part of a conspiracy to deprive him of his civil rights. The Court resolves these arguments below.

## II. DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).

### A.  The Federal Claims – Counts I and III

The federal claims are related, so the Court will address them together. Count I alleges that Hoopes and Stein (among other Defendants) violated Plaintiff's rights to speak, assemble, and function as a member of the press. (Doc. 151, ¶¶ 233-35.) Count III, as relevant to Hoopes and Stein, alleges that they reached a mutual understanding with others "to stop persons, including and in particular [Plaintiff], from expressing their opinions, raising unpopular viewpoints, and questioning Ambassador Ross," and thus agreed to "deprive [Plaintiff] of his constitutional rights, specifically his right to freedom of speech, freedom of assembly, and freedom of the press/journalism . . . ." (Doc. 151, ¶¶ 251-53.) Counts I and III rely on the facts discussed in Part I of this Order, including particularly the allegations about Hoopes's and Stein's involvement in planning the security measures and the events that unfolded during Plaintiff's questioning of Ambassador Ross. Count III summarizes those facts and sets forth additional facts intended to establish that Hoopes and Stein entered such an agreement to deprive Plaintiff of his rights.

5

Specifically, Count III alleges the following to establish that Hoopes entered an agreement with others:

- Hoopes was involved in planning the event and included Hawkins in the security planning, (Doc. 151, ¶ 254(a)-(d), (f)-(g), (l));[2]

- Hoopes participated in the conference call during which the plan to deal with protestors, hecklers, and other disruptions was discussed, (Doc. 151, ¶ 254(e));

- "Hoopes made and maintained eye contact with Josh Stein at multiple points during" Plaintiff's questioning of Ambassador Ross, (Doc. 151, ¶ 254(j));

- Hoopes pointed Plaintiff out to Hawkins before the lecture, (Doc. 151, ¶ 254(m)); and

- Hoopes "tacitly authorized" Plaintiff's removal by not conferring with KCPL's representative in advance, referred to Plaintiff as a "protestor" after the event, and did not dispute any of the claims asserted in Hawkins's incident report that he supplied to support the trespassing charge. (Doc. 151, ¶ 254(o)-(q).)

- Hoopes's signals to Stein "with her body and head" that were mentioned earlier were intended to identify Plaintiff as a person that she wanted removed. (Doc. 151, ¶ 254(n).)

With respect to Stein, Count III alleges the following facts establish his involvement in the conspiracy:

- Stein participated in the conference call during which the plan to deal with protestors, hecklers, and other disruptions was discussed, (Doc. 151, ¶ 254(a));[3]

---

[2] Paragraph 254 contains subparagraphs identified by letters. However, there are multiple "sets" of subparagraphs within Paragraph 254 – one for each defendant named in Count III – and all of the "sets" start with subparagraph a. Thus, there are multiple paragraphs properly described as "paragraph 254(a)," etc. The citations related to Hoopes are to the "set" of subparagraphs on pages 67 to 69 of the Amended Complaint.

[3] Stein's "set" of subparagraphs, (*see* footnote 2, *supra*), are those appearing on pages 69 and 70 of the Amended Complaint.

- Stein and Rausch told Case to cut the microphone if she received a signal from either of them, (Doc. 151, ¶ 254(b));

- Stein moved toward Plaintiff and "used physical crowding" to pressure Plaintiff, (Doc. 151, ¶ 254(d)-(e));

- "Stein . . . welcomed, approved, and did not protest or try to moderate the unfolding" plan to cut off Plaintiff's microphone. (Doc. 151, ¶ 254(f).)

These allegations are insufficient to support Plaintiff's constitutional claims against Hoopes or Stein. The First Amendment "erects a shield exclusively against governmental misconduct. It provides no protection against private behavior, no matter how egregious." *Federer v. Gephardt,* 363 F.3d 754, 760 (8th Cir. 2004). Similarly, by its terms § 1983 provides a right of action only against those who act under color of state law. Plaintiff does not suggest that Hoopes or Stein was a state actor as required for either the First Amendment or § 1983 to apply. Instead, Plaintiff relies on his theory (formally asserted in Count III) that Hoopes and Stein conspired with the off-duty police officers to violate his First Amendment rights. This is a legally viable theory, but it is not supported by the Amended Complaint.

"To be liable under § 1983, a private actor must be a willful participant in joint activity with the State in denying a plaintiff's constitutional rights. A plaintiff must plausibly allege a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Magee v. Trustees of Hamline Univ.,* 747 F.3d 532, 536 (8th Cir. 2014) (quotations omitted). A plaintiff cannot satisfy this requirement simply by declaring that an agreement to violate the Constitution existed; "[a] conspiracy claim . . . requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators," *Murray v. Lene,* 595 F.3d 868, 870 (8th Cir. 2010), and "[s]peculation and conjecture are not enough to prove that a conspiracy

7

exists." *Mahaney v. Warren County,* 206 F.3d 770, 772 (8th Cir. 2000) (quotation omitted). The allegations of conspiracy must be plead with particularity and specificity. "To plead conspiracy, a complaint must allege specific acts suggesting that there was a mutual understanding among the conspirators to take actions directed *toward an unconstitutional end*." *Duvall v. Sharp,* 905 F.2d 1188, 1189 (8th Cir. 1990) (emphasis supplied); *see also Kelly v. City of Omaha,* 813 F.3d 1070, 1077-78 (8th Cir. 2016); *Manis v. Sterling,* 862 F.2d 679, 681 (8th Cir. 1988); *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir. 1988).

Plaintiff does not dispute that he must allege specific facts demonstrating an agreement to violate his rights. (Doc. 185, p. 17.)[4] He alleges that he has done so with the allegations outlined above, and he focuses on the fact that there was a meeting of the minds to implement the security plan calling for the removal of a speaker if the speaker's microphone was turned off. (Doc. 185, pp. 17-18.) The Court does not agree that this establishes a meeting of the minds to violate Plaintiff's (or anyone's) constitutional rights. The Court acknowledges Plaintiff's contention that he was not protesting or disrupting the proceedings, and for purposes of this Order the Court accepts this to be the case. However, arranging an event, arranging for off-duty police to help provide security, and arranging a plan to address the possibility of attendees disrupting the event is not the same as entering an agreement to violate an individual's civil rights. Plaintiff does not contend (and the law does not support) that it was unconstitutional to have a plan for such eventualities, nor does Plaintiff contend that the plan was itself unconstitutional or called for the violation of constitutional rights. And, if there had been a person interfering with the lecture, heckling the speaker, or otherwise engaged in disruptive conduct, turning off that person's microphone and removing them would not have presented any First Amendment difficulties.

---

[4] All page numbers are those generated by the Court's CM/ECF system, and may not correspond to the page number on the document itself.

Hoopes and Stein may have agreed to the security plan, but that does mean that Hoopes or Stein agreed with police officers to utilize the otherwise proper plan in a manner that violated Plaintiff's constitutional rights. *See Magee,* 747 F.3d at 536 (complaint's allegations of multiple contacts between individuals prior to allegedly unconstitutional conduct does not make it plausible that there was an agreement to violate the Constitution).

Plaintiff compares this case to *Green v. Missouri,* 734 F. Supp. 2d 814 (E.D. Mo. 2010), but the circumstances are distinguishable. In that case, the plaintiff was removed from a public meeting, and he alleged that various individuals conspired with the police officers to violate his civil rights by causing his removal. Some of the defendants allegedly demonstrated their involvement by using a series of hand gestures and head nods to indicate to the officers that the plaintiff should be removed, and the court held that hand gestures and head nods could be evidence of an agreement to engage in concerted activity. *Green,* 734 F. Supp. 2d at 850-51. Here, however, Plaintiff does not allege that Hoopes's or Stein's gestures led to anything unconstitutional: he does not allege that they caused Case to shut off Plaintiff's microphone, caused Hawkins to act, or caused the off-duty police officers to act. As stated earlier, the Amended Complaint alleges that (1) Hawkins began to act when he anticipated that Plaintiff's microphone was going to be cut off and (2) Rausch's signal caused Case to cut off Plaintiff's microphone.

Thus, the Amended Complaint does not plausibly allege that Hoopes or Stein agreed with the off-duty police officers to violate Plaintiff's First Amendment rights.[5] At best Plaintiff has alleged that his rights were violated the night of the lecture, and they were violated when he was

---

[5] It is worth noting that Hawkins also was not a state actor. Thus, even if the Amended Complaint's allegations can be construed as alleging that Hoopes or Stein somehow sent a signal (directly or indirectly) to Hawkins, the most that would be established is that private individuals agreed to have Plaintiff removed. There are no allegations that Hoopes or Stein had a meeting of the minds with the off-duty officers who participated in that removal.

silenced, removed from the auditorium, charged, and booked even though he was not protesting or otherwise disrupting the lecture and had done nothing more than make critical comments about Israel. For purposes of this motion, the Court will accept that Plaintiff has adequately alleged these violations. However, Plaintiff has not adequately alleged that Hoopes or Stein was involved in, or conspired to commit, these violations. There is no allegation that either of them asked that Plaintiff be searched, that Plaintiff's microphone be turned off, or that Plaintiff be removed. Construed in the light most favorable to Plaintiff, the Amended Complaint alleges that Rausch gave the signal that caused Plaintiff's microphone to be cut off, and that Hawkins anticipated that signal in advance by commencing actions necessary to remove Plaintiff. The fact that Hoopes and Stein may have approved of Plaintiff's removal, failed to prevent his removal, or breached an agreement with the Library about removing attendees does not make it plausible that they had a meeting of the minds with the off-duty officers to violate Plaintiff's constitutional rights.

## B. The State Claims

### *1. Count VII – False Arrest*

Count VII alleges that Hoopes (along with others, but not Stein) is liable for false arrest. This claim has two elements: "restraint of the plaintiff against his will, and the unlawfulness of that restraint. And a defendant may be liable for false arrest even if he did not actually confine the plaintiff, if that defendant instigated, caused, or procured the arrest." *Blue v. Harrah's N. Kansas City, LLC,* 170 S.W.3d 466, 472 (Mo. Ct. App. 2005) (citation omitted). "Providing information that forms the basis of a false arrest may make one liable for instigating the arrest." *Id.* at 473. The Amended Complaint does not contain facts that plausibly establish Hoopes's liability for false arrest.

Plaintiff contends that a claim for false arrest has been stated because of Hoopes's involvement in planning the lecture and the security for it, but Plaintiff's Suggestions in Opposition do not identify any information that Hoopes provided to the arresting officers that led to Plaintiff's arrest, (*see* Doc. 185, p. 21), and the Court's review of the First Amended Complaint did not reveal any such allegations. Even Hoopes's act of pointing out Plaintiff to Hawkins before the lecture (1) was not a communication to the police, (2) is not alleged to have played a role in Plaintiff's arrest, and (3) is not alleged to have included any false statements. Thus, Count VII fails to state a claim for false arrest against Hoopes.

### *2. Count VIII – Civil Conspiracy*

Under Missouri law, a civil conspiracy "is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act." *Oak Bluff Partners, Inc. v. Meyer,* 3 S.W.3d 777, 780-81 (Mo. 1999) (en banc). However, it is not an independent cause of action; instead, a civil conspiracy is a theory of vicarious liability (like *respondeat superior*); it extends liability to all members who agree to commit a tort, including those who did not personally engage in the tortious act. *Central Trust & Inv. Co. v. Signalpoint Asset Mgt., LLC,* 422 S.W.3d 312, 324-25 (Mo. 2014) (en banc); *see also Royster v. Baker,* 365 S.W.2d 496, 500 (Mo. 1963); *Amesquita v. Gilster-Mary Lee Corp.,* 408 S.W.3d 293, 304 (Mo. Ct. App. 2013); *Envirotech, Inc. v. Thomas,* 259 S.W.3d 577, 586 (Mo. Ct. App. 2008). Thus, if the underlying tort is not proven (or otherwise does not exist), there can be no liability for civil conspiracy. *E.g., Deutsche Fin. Servs. Corp. v. BCS Ins. Co.,* 299 F.3d 692, 700 (8th Cir. 2002); *Wiles v. Capitol Indemnity Corp.,* 280 F.3d 868, 870-71 (8th Cir. 2002).

The Amended Complaint does not allege that Hoopes or Stein entered an agreement to commit any torts or other violations of Missouri law. It alleges that Hoopes and Stein (and others)

11

agreed to stop people from expressing unpopular viewpoints or asking Ambassador Ross uncomfortable questions. (Doc. 151, ¶¶ 292-94.) And, to establish that agreement, the Amended Complaint restates the allegations previously advanced in Count III. (Doc. 151, ¶ 295; *see also* pages 6-7, *supra*.)

For the reasons expressed earlier, (*see* Part II.A, *supra*), the Court concludes that the Amended Complaint does not allege facts that make the agreements described in Count VIII plausible. The Amended Complaint does not allege that Hoopes or Stein agreed with anyone to stifle unpopular, critical, challenging, or uncomfortable comments or questions. The Amended Complaint alleges that Hoopes and Stein agreed with others regarding a plan for addressing disruptions, and there is no underlying tort associated with such a plan. Even if the security measures were used to stifle Plaintiff's First Amendment activity (an issue the Court need not address), there are no allegations making it plausible that Hoopes or Stein entered an agreement to stifle First Amendment activity generally, or Plaintiff's First Amendment activity specifically. In the absence of an underlying tort, Count VIII must be dismissed.

### III.  CONCLUSION

The Amended Complaint does not contain facts that plausibly establish that Hoopes or Stein reached an agreement to violate Plaintiff's civil rights or to engage in tortious conduct. Therefore, Plaintiff's claims against them are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE:  August 30, 2019          UNITED STATES DISTRICT COURT