IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JEREMY ROTHE-KUSHEL, )
 )
         Plaintiff, )
v. ) No. 18-00319-CV-W-BP
 )
JEWISH COMMUNITY FOUNDATION )
OF GREATER KANSAS CITY, *et al.*, )
 )
         Defendants. )

**ORDER AND OPINION GRANTING DEFENDANT BRENT PARSONS'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Complaint arises from an incident at the Kansas City Public Library, ("the Library"), on May 9, 2016. Plaintiff filed suit against multiple parties, some of whom were later dismissed by the Court and some of whom were dismissed pursuant to the parties' stipulations. The only remaining Defendant is Brent Parsons (who is sued in his individual capacity), and he has filed a Motion for Summary Judgment.[1] For the reasons set forth below, his motion, (Doc. 224), is **GRANTED.**[2]

## I. BACKGROUND

Many of the relevant facts are uncontroverted, and the Court will provide citations to the Record only as necessary.[3] In 2015, the Jewish Community Foundation of Greater Kansas City, ("JCF") and the Truman Library Institute, ("TLI"), established a lecture series about President

---

[1] The motion is filed jointly on behalf of Parsons and Defendant Michael Curley, but Plaintiff and Curley subsequently stipulated to a dismissal of Plaintiff's claims against Curley, (Doc. 231), so the Court will not address the motion insofar as it relates to Curley.

[2] Unless otherwise indicated all page numbers are those generated by the Court's CM/ECF system and may not correspond to the document's original pagination.

[3] The parties also present facts that will not be mentioned, either because (1) they relate to Curley, *see* footnote 1, *supra*, (2) they are not relevant under the governing law, or (3) they are really opinions or arguments and not facts.

Truman's decision to recognize Israel and that decision's impact on world events. One of the lectures in the series was to be delivered by former ambassador Donald Ross, and that lecture was to be held at the Truman Forum Auditorium located at the Library. Organizers planned for a question and answer session following Ambassador Ross's lecture. While the event was planned and organized by JCF and TLI, the Library was regarded as (and identified as) a "co-sponsor" or "co-presenter."

On May 3, 2016, a conference call was held to, *inter alia,* plan security for the lecture. Those participating in the call included:

- JCF's Executive Director, former Defendant Lauren Hoopes,
- JCF employees Brooke Hardy and former Defendant Joshua Stein,
- JCF's head of security, former Defendant Blair Hawkins, and
- TLI's Executive Director, Alex Burden.

During the conference, it was agreed that Hawkins would employ the services of off-duty police officers to assist with security. It was also agreed that those protesting or disturbing the proceedings would be removed, and that during the question and answer period Hawkins would remove individuals if their microphone was cut off. Plaintiff contends (and Parsons does not disagree) that the Library imposed (or at least desired) limitations on the authority to remove people, but this fact is not material to the issues before the Court.[4]

Parsons was a detective for the Kansas City, Missouri Police Department, and was one of the off-duty officers hired by Hawkins. The other two officers were former Defendants Sergeant

---

[4] Plaintiff also makes much of a perceived difference between those who "protest" and those who "cause a disturbance." The Court is not convinced that there is much difference, given that a person could protest in a manner that disturbed and disrupted the lecture. Regardless, given the Record and the issues before the Court, there is no need to delve into this matter to resolve Parsons's motion.

2

Michael Satter and Detective Michael Curley. During the lecture, Parsons and Hawkins were in the auditorium: Parsons was on the right side and Hawkins was in the back. Curley and Satter were outside the auditorium.[5]

The audiovisual equipment (including the microphones used for the Q-and-A session) were operated by Leslie Case, a Library employee. The night of the lecture, she was approached by Stein and former Defendant Kim Rausch (a TLI employee) and told that if she was given a signal, she should mute the microphone. Case did not agree to this arrangement and resolved to use her best judgment as to how to proceed. (Doc. 232-1, p. 173 (Woolfolk Trial Transcript, p. 176); Doc. 232-13, p. 25 (Case Dep., p. 98); Doc. 232, p. 40 (Plaintiff's Uncontroverted Fact 74, uncontroverted by Parsons).)

As planned, a question and answer session began immediately after Ambassador Ross concluded his lecture. Plaintiff was the first person to ask a question. His question and the surrounding events are recorded, and the Court has been referred to two videos – one submitted by Plaintiff in response to Parsons's motion and one submitted by JCF in connection with its (now moot) motion. The Court has viewed the videos, and they demonstrate that Plaintiff was permitted to ask his question (which took nearly ninety seconds to ask).[6] Ambassador Ross responded to

---

[5] Plaintiff contends that Hawkins shared "the cut-the-mic plan for removal of 'protestors'" with Parsons. (Doc. 232, p. 12 (Response to Parsons's Uncontroverted Fact 11).) As Parsons points out, none of the citations to the Record provided by Plaintiff establish this fact. (*But see* Doc. 227-9, p. 2 (Hawkins Dep., p. 101).) Nonetheless, even if Parsons knew about the arrangement, this fact is not helpful to Plaintiff because, as will be discussed below, the decision to cut Plaintiff's microphone was made by an employee of the Library.

[6] Plaintiff controverts the assertion that he was allowed to ask his question without interference and has referred the Court to the video. (Doc. 232, p. 13 (Response to Parsons's Uncontroverted Fact 17).) He presents his own characterization of events in other ways as well, such as when he denies that he interrupted or argued with Ambassador Ross. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Eighth Circuit has applied *Scott* to hold that a district court need not treat a fact as disputed when the fact is conclusively established by video evidence. *E.g., Boude v. City of Raymore,* 855 F.3d 930, 933 (8th Cir. 2017); *Coker v. Arkansas State Police,* 734 F.3d 838, 841 (8th Cir. 2013). Therefore, the Court can deem facts depicted in the videos as conclusively established for purposes of summary judgment.

3

Plaintiff's question, and Plaintiff began arguing with Ambassador Ross. During this exchange – that is, after Ambassador Ross answered Plaintiff's question and while Plaintiff was disagreeing with Ambassador Ross – Case saw Stein approach Plaintiff. She thought Stein was asking Plaintiff to relinquish the microphone to the next audience member with a question, so she muted the microphone – which was consistent with the Library's custom in such situations. (Doc. 232-13, pp. 14, 23-24 (Case Dep., pp. 55-56, 92, 95-96); Doc. 232, p. 41 (Plaintiff's Uncontroverted Fact 79, not controverted by Parsons).) Meanwhile, Hawkins was approaching Plaintiff, and he reached Plaintiff at approximately the same time that Case cut the microphone. Plaintiff continued trying to address Ambassador Ross, and Hawkins grabbed Plaintiff's arm, told him "You're done" and tried to move him from the microphone. Plaintiff began yelling louder, tried pulling away from Hawkins, and at one point can be heard yelling for Hawkins to let go of his arm. He continued yelling even after the next questioner approached the microphone to ask her question of Ambassador Ross. At some point, Parsons joined the fracas, but his actions are not clearly depicted on the video (either because of the video's poor quality or because he arrived outside of the camera's view). The Record reflects that in some manner Parsons helped Hawkins escort/remove Plaintiff from the auditorium.

Eventually, Plaintiff and Parsons (and possibly Hawkins) got to the lobby. Parsons directed Curley to identify Plaintiff, and to that end Curley asked for Plaintiff's identification. Plaintiff declined to give Curley his identification until he was told why he had to provide it; Curley requested the identification "[m]ultiple times" but Plaintiff did not provide it to him. (Doc. 225-7, pp. 310-12 (Plaintiff's Dep., pp. 310-12); Doc. 225, p. 11 (Parsons's Uncontroverted Fact 43, uncontroverted by Plaintiff).) Detective Parsons observed the exchange between Curley and Plaintiff. (Doc. 225-2, ¶ 46.) And, at some point Detective Parsons determined that Plaintiff

4

should be placed under arrest. Plaintiff "resisted . . . attempts to place handcuffs on him by tensing up, pushing back, and refusing to give up his hands." (Doc. 225-2, ¶ 47.)[7]

Plaintiff was issued two citations. The first charged him with trespassing and the ticket states that Plaintiff "was advised to leave the premises and refused to do so." (Doc. 227-12, p. 4.)[8] The second citation charged Plaintiff with obstructing or resisting a police officer for "pulling away while being arrested." (Doc. 227-12, p. 5.) These charges were eventually dismissed.

There are five remaining claims against Parsons; they are contained in Counts I-III and VII-VIII.[9] Count I alleges that Parsons violated Plaintiff's rights under the First Amendment and Count II alleges that Parsons violated Plaintiff's rights under the Fourth Amendment. Count III alleges that Parsons conspired with Hoopes, Stein and JCF to violate Plaintiff's First and Fourth Amendment rights. Counts VII and VIII are based on state law; Count VII asserts a claim for false arrest, and Count VIII asserts that Parsons conspired with Hoopes, Stein and JCF to stop people from "posing uncomfortable questions to" or "raising unpopular viewpoints with" Ambassador Ross. Parsons contends that he is entitled to summary judgment on all these claims, and Plaintiff opposes summary judgment. As discussed further below, the Court agrees with Parsons that summary judgment is appropriate.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a

---

[7] Plaintiff denies resisting but agrees that he "might have flinched a little bit, because I didn't know what was happening and it was unexpected." (Doc. 225-7, p. 313 (Plaintiff's Dep., p. 313).)

[8] Plaintiff characterizes this ticket as charging him with trespassing on City property, which he finds problematic because while the Library is *public* property it is not *City* property. However, neither the ticket nor the ordinance referenced in the ticket (§ 50-102 of the Kansas City Code of Ordinances) refers to City property.

[9] Parsons was not named in Counts III and IV. He was named in Count VI, which asserted a common-law battery claim, but Plaintiff states that he is abandoning that claim. (Doc. 232, p. 61 n.10.)

5

matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). A party opposing a motion for summary judgment may not simply deny the allegations but must point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

For ease of discussion, the Court will address Count II first.

### A. Count II – Fourth Amendment

Parsons contends that he is entitled to summary judgment because he had probable cause to arrest Plaintiff. He further argues that even if he did not have probable cause, he is entitled to qualified immunity. Plaintiff argues to the contrary, contending that probable cause was so lacking that Parsons is not entitled to qualified immunity. The Court agrees with Parsons.

"Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Baribeau v. City of Minneapolis,* 596 F.3d 465, 474 (8th Cir. 2010) (cleaned up; quotation omitted). This is

6

not a "high bar," *District of Columbia v. Wesby,* 138 S. Ct. 577, 586 (2018), and "[b]ecause probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Id.* at 585 n.2.

The Court must also consider whether Parsons is entitled to qualified immunity. "Qualified immunity protects governmental officials from liability for civil damages if they have not violated clearly established statutory or constitutional rights of which a reasonable person would have known. The qualified immunity doctrine provides protection to all but the plainly incompetent or those who knowingly violate the law. It allows officers to make reasonable errors." *Clayborn v. Struebing,* 734 F.3d 807, 808 (8th Cir. 2013) (cleaned up). A state official is protected by qualified immunity unless he (1) violated a statutory or Constitutional right that was (2) clearly established at the time of the challenged conduct. *E.g., Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). When considering whether an arresting officer is entitled to qualified immunity, the relevant question is not whether he had probable cause, but whether he had arguable probable cause. *E.g., White v. Jackson,* 865 F.3d 1064, 1074 (8th Cir. 2017). Here, the uncontroverted facts demonstrate that Parsons had probable cause to arrest Plaintiff – and even if he did not, he had arguable probable cause and is therefore entitled to qualified immunity.

### *1. Trespass*

Parsons had probable cause to arrest Plaintiff for trespassing. Section 50-102(a) of the Kansas City Code of Ordinances states that a person is trespassing "if he knowingly . . . remains unlawfully in or on a building or inhabitable structure upon real property." Because he was in the auditorium, Parsons knew that Plaintiff had received an answer to his question and thereafter began disagreeing/arguing with Ambassador Ross. Library personnel turned off Plaintiff's microphone, but Plaintiff continued addressing Ambassador Ross (albeit briefly) and did not yield to the next

7

questioner. The person in charge of security (Hawkins) was obviously trying to get Plaintiff to leave. Given his knowledge of these facts, Parsons had probable cause (or at least arguable probable cause) to believe that Plaintiff was not lawfully remaining in the auditorium where the lecture was being held.

Plaintiff contends that he was never told to leave, so he could not have been trespassing. While this contention may have served as a defense to the charge, this does not preclude Parsons from having probable cause to believe that Plaintiff was trespassing; the events objectively demonstrated that Plaintiff's license to remain in the auditorium had been revoked and Parsons confirmed with Hawkins that JCF wanted to press charges for trespass. (Doc. 225-1, p. 125 (Parsons Dep., p. 124); *see also* Doc. 101 (Plaintiff's Amended Complaint) ¶¶ 201-03.) Plaintiff points to the testimony of a Library official (Steven Woolfolk) and suggests that it establishes that the Library did not regard him as a trespasser, but Woolfolk testified that he was "trying to prevent [Plaintiff's] removal from the building, not necessarily his arrest" because he "did not know that he was being arrested." (Doc. 232-22, p. 53 (Woolfolk Dep., p. 210).) He further testified he drew a distinction between removing Plaintiff from the auditorium and removing him from the building, and that "the idea was to get him away from the microphone and – get everybody away from the microphone and into the lobby . . . . As far as I was concerned at that time, once we were certain that everybody had their emotions in check, he could have returned." (Doc. 232-22, p. 53 (Woolfolk Dep., pp. 210-11).)[10] Regardless, there is no evidence that Woolfolk told Parsons any of his thoughts, and as stated earlier Parsons knew that the event organizer regarded Plaintiff as a

---

[10] At times Plaintiff seems to suggest that JCF could not deem someone to be a trespasser and only the Library could do so. This point has not been established: the event was arranged by JCF and was taking place in the Library. Plaintiff does not identify anything – other than the Library's expectation – that precluded JCF from determining that someone was trespassing at its event. More importantly, from the perspective of a reasonable officer in Parsons's position (who knew nothing about the Library's expectations) JCF was permitted to determine that someone should leave the auditorium where the event it had arranged was being held.

8

trespasser. Under these circumstances, Parsons had probable cause to believe that Plaintiff was trespassing.

### 2. Refusing to Provide Identification

Section 50-44 of the Code of Ordinances makes it unlawful to "in any way or manner hinder, obstruct . . . resist or otherwise interfere with any . . . officer of the city police department . . . in the discharge of his/her official duties . . . ." While Plaintiff was not charged with violating this ordinance, Officer Parsons has probable cause to arrest him for this violation. And, as stated above, the fact that Plaintiff was not arrested for this violation does not preclude a finding that there was probable cause for such an arrest. *Wesby,* 138 S. Ct. at 585 n.2.

Plaintiff does not deny that refusing to provide identification when asked violates § 50-44. Instead, he denies that he refused to provide his identification, but this argument relates more to guilt than to whether there was objective probable cause to support the arrest. The facts establish that Plaintiff was asked more than once to provide his identification and that he did not do so. Instead, he told Curley that he had identification but would not show it to him until certain of his (Plaintiff's) questions were answered. A reasonable officer in this situation could conclude that there was probable cause to believe that Plaintiff violated § 50-44.

### 3. Conclusion

The Court concludes that Parsons had probable cause to arrest Plaintiff, either for trespassing or for refusing to provide his identification. Even if probable cause was lacking, Parsons is entitled to qualified immunity because he had arguable probable cause. Accordingly, Parsons is entitled to summary judgment on Count II.[11]

---

[11] The Court's discussion makes it unnecessary to consider Parsons's argument that he had probable cause to arrest Plaintiff for engaging in disorderly conduct or disturbing the peace. The Court also declines to address Plaintiff's argument that there was not probable cause to arrest him for resisting arrest because the facts that may or may not

9

## B. Count I – First Amendment

Plaintiff argues that interrupting his speech violated his First Amendment rights, (Doc. 232, pp. 54-57), and that he was arrested based on the content of his speech. (Doc. 232, pp. 56-59.) Parsons contends that he is entitled to summary judgment on this claim, and the Court agrees.

For the sake of argument, the Court presumes that Plaintiff had a First Amendment right to ask Ambassador Ross questions. Such a right was not limitless; he could not ask so many questions that other audience members were deprived of the opportunity, and he had no right to argue with Ambassador Ross (and no right to expect Ambassador Ross to engage in such an argument). Nonetheless, the fact remains that Parsons did not interfere with Plaintiff's ability to ask Ambassador Ross questions. Plaintiff asked a question and got a response. Case was the person who turned off Plaintiff's microphone, and Hawkins was the person who initially moved Plaintiff away from the microphone so the next person could ask a question. By the time Parsons did anything, Plaintiff's ability to further address Ambassador Ross had already been terminated by others.

Parsons is also entitled to summary judgment to the extent that Plaintiff contends his arrest was based on the content of his question. Plaintiff argues that his arrest violated the First Amendment even if it was supported by probable cause and supports this theory by relying on the nature and content of his questions and arguments regarding others' subjective beliefs. (Doc. 232, pp. 58-59.) But the Supreme Court has held that a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett,* 139 S. Ct. 1715, 1724 (2019). Plaintiff has not discussed or differentiated *Nieves*, and the Court sees no basis

---

have constituted "resisting" occurred during the arrest for trespass, and thus could not have been the reason for the arrest itself. He was charged with resisting arrest, but his "resistance" was not the reason for his arrest.

10

for disregarding its holding. Therefore, given the Court's conclusion that Parsons had probable cause to arrest Plaintiff, Parsons is entitled to summary judgment on Count I.

### C. Count III – Conspiracy to Violate Civil Rights

Parsons contends that he is entitled to summary judgment on Plaintiff's conspiracy claim under federal law because the Record does not demonstrate a meeting of the minds among the alleged conspirators as required by cases such as *Murray v. Lene,* 595 F.3d 868 (8th Cir. 2010). Plaintiff did not respond to this argument (as pointed out by Parsons in his Reply Suggestions (Doc. 242, p. 35 n.2)), and the Court deems this claim to have been abandoned.[12]

### D. Count VII – False Arrest

A false arrest occurs when a person has been confined without legal justification. "[T]here are only two elements: restraint of the plaintiff against his will, and the unlawfulness of that restraint." *Blue v. Harrah's North Kansas City, LLC,* 170 S.W.3d 466, 472 (Mo. Ct. App. 2005). Given the Court's conclusion that Parsons had probable cause to arrest Plaintiff, Parsons is entitled to summary judgment on Count VII.[13]

### E. Count VIII – State Law Conspiracy

Under Missouri law, a civil conspiracy "is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act." *Oak Bluff Partners, Inc. v. Meyer,* 3 S.W.3d 777, 780-81 (Mo. 1999) (en banc). However, it is not an independent cause of action; instead, a civil conspiracy is a theory of vicarious liability that extends liability to all members who agree to commit a tort, including those who did not personally engage in the tortious

---

[12] The Court also notes that its review of the Record failed to reveal any evidence that would support a meeting of the minds between Parsons and anyone else to violate Plaintiff's civil rights.

[13] This conclusion makes it unnecessary to consider Parsons's argument that he is entitled to official immunity under state law.

11

act. *Central Trust & Inv. Co. v. Signalpoint Asset Mgt., LLC,* 422 S.W.3d 312, 324 (Mo. 2014) (en banc); *see also Amesquita v. Gilster-Mary Lee Corp.,* 408 S.W.3d 293, 304 (Mo. Ct. App. 2013); *Envirotech, Inc. v. Thomas,* 259 S.W.3d 577, 586 (Mo. Ct. App. 2008).

As with his federal conspiracy claim, Plaintiff has not responded to Parsons's argument that he is entitled to summary judgment on the state conspiracy claim. (*See* Part II.C, *supra*.) Moreover, Parsons correctly argues that there is no evidence that any person committed an underlying tort, and without an underlying tort a civil conspiracy claim cannot be maintained. *E.g., Hibbs v. Berger,* 430 S.W.3d 296, 320 (Mo. Ct. App. 2014); *Haney v. Fire Ins. Exchange,* 277 S.W.3d 789, 793 (Mo. Ct. App. 2009). For these reasons, Parsons is entitled to summary judgment on Count VIII.

### III.  CONCLUSION

For the reasons stated above, Parsons is granted summary judgment on the remaining counts asserted against him (Counts I, II, III, VII and VIII).

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE:  January 30, 2020          UNITED STATES DISTRICT COURT